## ALBANY STEAM TRAP CO. v. WORTHINGTON et al.

(Circuit Court, S. D. New York. April 27, 1896.)

PATENTS—LIMITATION AND INFRINGEMENT—PUMP REGULATING VALVES.
The Blessing patent, No. 207,485, for an improvement in pump regulating valves, construed in connection with the disclaimer filed April 18, 1891, and *held* to be limited to the precise means described, for automatically regulating a pump for returning to a steam boiler the water of condensation, by means of a closed system,—that is, one not open to the atmosphere.

This was a suit in equity by the Albany Steam Trap Company against Charles C. Worthington and William A. Perry, for alleged infringement of a patent relating to pump regulating valves.

Cowen, Dickerson, Nicoll & Brown, and Mr. Chapin, for complainant.

Philipp, Munson & Phelps, for defendants.

TOWNSEND, District Judge. The complainant herein alleges infringement of its patent No. 207,485, granted August 27, 1878, to James H. Blessing. The patent originally covered generally an "improvement in pump regulating valves." It consisted in means for automatically regulating the operation of a boiler feed pump. The specification stated that it was "particularly useful in feed-water pumps which return to steam boilers the water of condensation from heating coils in buildings." The claims as to which infringement is alleged are the following:

"(1) An apparatus, constructed substantially as described, whereby the amount of water supplied to a pump regulates the operation of said pump.

"(2) A pump regulating apparatus, constructed substantially as described, and placed intermediate between the water and the pump, whereby the water passing to such regulating apparatus opens the steam valve of the pump, which valve is closed on the cessation of the water supply."

In steam-heating systems, when one or more of the coils were below the level of the water in the boiler, so that the water of condensation could not be returned by gravity, a small receiving tank and return trap were originally used, by means of which the water, forced from said tank into said trap, opened a valve in a pipe connected with the boiler, and admitted steam pressure into said trap, which forced the water back into the boiler. This method was impracticable when heating coils were at a considerable distance below the water level of the boiler, and where the steam for a heating system was taken, by means of a reducing valve, from a boiler used for other purposes. One way of obviating these objections was to provide an open receiving tank, from which the water was pumped back into the boiler. The chief disadvantage

of this latter arrangement lay in the loss of heat by the exposure of said water to the atmosphere. In the device of the patent in suit, the water of condensation automatically started and stopped a boiler feed pump. The patent, as originally granted, covered any such pump regulating apparatus operated by means of the return water of condensation. After suit brought on April 18, 1891, the following disclaimer was filed:

"Your petitioner, therefore, hereby disclaims any apparatus, as included in the claims of said patent, which is not directly connected with the return pipe, H, under the pressure of the return from the heating system without escape to the atmosphere."

It is unnecessary to consider whether this disclaimer either estops complainant to contend that the original claims were valid, or so limits said original claims as to now make them valid. The patented improvement is, in fact, limited by the disclaimer to what is known as the "closed system,"—that is, a system wherein the water of condensation from steam-heating coils is returned to the boiler without exposure to the atmosphere, and consequent loss of heat.

There is much force in defendant's contention that the invention attempted to be covered through the operation of the disclaimer is neither described nor implied in the patent. The eminent expert for complainant, Mr. Brevoort, admits that the patent was not in terms limited to a closed system. The only advantage of the alleged invention, stated in said specification, is the automatic control of the pump.

But, assuming that the disclaimer is valid, let us consider the question of patentable novelty and infringement. It is unnecessary to examine the whole field occupied by the prior art. The specification of the patent in suit states that it was customary to force the water of condensation back into the boiler by means of a force pump, requiring the presence of an engineer to regulate it. Both open and closed tanks, from which the water was thus pumped, were old. The return-trap system, already considered, was also a closed system. It therefore appears that the patentee was not the first inventor of means for returning the water of condensation to the boiler without loss of heat.

The decision of this case depends, not upon the validity of the patent in suit, but upon its scope. It is not anticipated. But, irrespective of the general state of the prior art, it appears that Blessing, himself, by his prior patents of 1871 (Nos. 214,257 and 216,403) had shown other means for returning the water of condensation to the boiler without loss of heat. In the devices described in these patents, the water of condensation acted either upon a diaphragm or piston, as in the patent in suit it acts upon the pump. But these devices, as described, because of the variable flow of the return water, would not successfully work automatically. Defendants' expert, therefore, first constructed one with modifications, which would work by regulating the valves by hand, and afterwards so altered and adapted it that it would work automatically. It is not clear, however, that these modifications did not themselves involve invention. The effect, then, of Blessing's prior contributions to the art

is merely to limit the invention in suit. Assuming the patent to be properly limited, by the disclaimer, to a closed system, Blessing's improvement covered the form of apparatus therein described, to automatically return the water of condensation to the boiler.

To determine the scope of this alleged invention, and the question of infringement, it is necessary to consider only a single plant, as bearing on the state of the prior art already discussed, and to compare it with defendants' construction. The Syracuse plant was constructed in 1876. It comprised a closed tank for receiving the water of condensation, connected with a pump, which pumped said water back into the boiler. Complainant's counsel are forced to admit the important bearing of this evidence. Speaking of what Bates, the constructor of this plant, did, they say:

"This work of Mr. Bates was one step ahead of the prior art towards the invention of the improvement in suit. He did what had never been done before,—returned the water of condensation under pressure to a boiler carrying so high pressure that a return trap would not operate."

And this part of the case may finally stand upon their assertion, that the difference between the prior art, as shown in the Syracuse plant and the patented improvement, is between regulation by hand and automatic regulation. The construction and operation of this automatic regulator must be further explained. It comprises two disk-shaped vessels, provided with a spring-pressed diaphragm and two concentric pipes, the inner of which is attached to said diaphragm. The return water of condensation enters the larger pipe, and, when it has filled it and the space above the diaphragm, the weight thereof depresses the diaphragm and said smaller pipe and a valve rod governing a pump regulating steam valve attached to said pipe, which causes said valve to close, and prevents the steam from operating the pump. Thereafter, the water, continuing to flow, passes into said smaller pipe, and also below said diaphragm, until its upward pressure, plus that of the spring, floats the diaphragm, elevates said smaller pipe, opens the valve, and admits the steam to the pump, which pumps the water back to the boiler, and automatically stops when the supply thereof is exhausted.

The state of the art already considered shows that, if this patent be construed to cover any apparatus adapted to regulate a pump through the action of the water supplied to the pump, it would be void. As counsel for complainant admit in their reply brief, in discussing the necessity of the disclaimer:

"This new element or governing apparatus, in combination with the open tank, operates, in substantially the same way as the old open tank, with a float, and produces the same result, and is, therefore, thus combined, the exact equivalent of the open tank and float of the Poage patent, the Kokomo devices, and the elevator devices, provided such devices were so combined. * * * It is not old, except as the term is used to express an equivalent. It is old, because, combined with the open tank, it is not patentably new."

If said patent be construed to cover the precise means claimed, as limited by the disclaimer to the closed system, the defendants do not infringe. The only device used by them not found in the Syracuse plant is an ordinary float in the return tank, which automatically governs the operation of the pump. Such floats were used in vari-

ous boilers and tanks, and notably in the Kokomo and other open tanks, prior to this patent. Complainant is not entitled to claim that this construction is the equivalent of his patented device.

Let the bill be dismissed.